UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PATRINA HARRISON,

    Plaintiff,

    v.

IFIT HEALTH & FITNESS, et al.,

    Defendants.

Case No. 21-cv-10079-PJH

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Re: Dkt. No. 15

Defendant iFit, Inc.'s motion to dismiss came on for hearing before this court on April 28, 2022. Plaintiff, proceeding pro se, appeared on her own behalf. Defendant appeared through its counsel, Bradley R. Mathews. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendant's motion, for the following reasons.

## BACKGROUND

This is a products liability case involving treadmills purchased for in-home use. Plaintiff Patrina Harrison is an asthma and allergy sufferer who resides in San Francisco. Compl. ¶ 8. Defendant iFit, Inc. (hereafter "iFit," erroneously sued as IFIT HEALTH & FITNESS, ICON HEALTH & FITNESS/NORDICTRACK, and UTS) is a manufacturer of fitness equipment, including treadmills, based in Utah. Compl. ¶ 10. Defendant makes no distinction between the names of the entities identified in the complaint, representing only that they are all one and the same as iFit. Defendant manufactures the Nordic Track 2450 Commercial and Freemotion treadmills. Compl. ¶ 10.

**A.    Narrative**

Plaintiff purchased a Nordic Track 2450 Commercial treadmill from Dick's Sporting Goods in Daly City, California, on January 16, 2021.  Compl. ¶¶ 14-20.  She purchased the treadmill for aerobic exercise and selected the treadmill in particular because the salesperson represented that it did not emit any kind of chemical odors.  Compl. ¶¶ 14-18.  Plaintiff paid $2,299.99 for the treadmill, along with $135.00 for delivery to her residence and assembly, and when it was delivered and assembled in her home on January 29, 2021, she paid the delivery person a $40.00 tip.  Compl. ¶¶ 20-22.

Plaintiff began an exercise session on the treadmill following the delivery person's departure, and she describes,

> Within 15 minutes of Plaintiff's aerobic exercise session on the treadmill, a burst of hot, steaming, offensive, chemical odor immediately started to emitted [sic] from the internal console of the treadmill, resulting in Plaintiff inhaling all such chemical fumes, immediately resulting in Plaintiff experiencing shortness of breath, uncontrollable coughing, itching throat, dizziness, burning eyes, and burning nostrils, all caused from exposure to the chemical odor that was emitted from the treadmill's console . . .

Compl. ¶ 24.  The chemical odor filled plaintiff's apartment and remained.  Compl. ¶ 25.  Plaintiff called Dick's Sporting Goods to initiate a return of the treadmill the same day, but she was told that it would not be picked up until February 28, 2021, at the earliest.  Compl. ¶ 27.  Plaintiff hired a moving company to pick up the treadmill from her home and return it to Dick's Sporting Goods to mitigate further damage to her health on February 9, 2021, paying $494.00 plus a tip of $140.00.  Compl. ¶ 28.

Plaintiff then purchased a Freemotion treadmill from Fitness Warehouse Direct on July 8, 2021, for a cost of $1,975.50, and a tip of $120.00, which included delivery, assembly, and an option for an extended manufacturer warranty.  Compl. ¶ 30.  She purchased a four-year extended service plan for the treadmill from Icon Health and Fitness for $279.99 on July 10, 2021.  Compl. ¶ 31.  Plaintiff reports that she intended for the extended service plan to apply to the Freemotion treadmill, but the paperwork for the extended service plan applied to the Nordic Track 2450 Commercial treadmill she

2

purchased earlier.  Compl. ¶¶ 34-37.  Defendant's representatives informed plaintiff that the extended warranty would not cover the second-hand treadmills sold by Fitness Warehouse Direct.  Compl. ¶ 37.

**B.     Procedural History**

Plaintiff filed the complaint in this lawsuit on December 31, 2021, alleging the following causes of action against all defendants:

1. Manufacturing defect,
2. Negligence – duty to warn,
3. Strict liability – inadequate warning,
4. Breach of contract,
5. Implied warranty of merchantability,
6. Implied warranty of fitness for a particular purpose, and
7. Violation of California Business and Professions Code Section 17200.

See Compl. ¶¶ 46-113.  For each claim, she "seeks special damages, general damages, expectancy damages, punitive damages, and statutory damages" without specificity.  Id.

The court granted plaintiff's motion to proceed in forma pauperis and screened the complaint pursuant to Title 28 U.S.C. § 1915(a)(1), concluding that the pleading satisfied the requirements of Rule 8.  Dkt. 7.  In the screening order, the court noted its concern with plaintiff's initial showing of subject matter jurisdiction.  Dkt. 7 at 4.

Defendant iFit filed the instant motion seeking dismissal of the complaint on several grounds, including lack of subject matter jurisdiction, failure to state a claim, and failure to plead with specificity a cause of action sounding in fraud.  Defendant asks for dismissal of the entire action, or in the alternative, certain causes of action and the claim for punitive damages.

//
//
//
//

# DISCUSSION

## A. Legal Standards

### 1. Sufficiency of Pleading

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).

However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

In the event dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005). As a general rule, courts have a liberal policy favoring amendments to pleadings, which is "applied even more liberally to pro se litigants."

Eldridge v. Block, 832 F.2d 1132, 1135 (9th Cir. 1987).

For plaintiffs' claims that sound in fraud, the complaint must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires a party alleging fraud or mistake to state with particularity the circumstances constituting fraud or mistake. "To satisfy Rule 9(b)'s particularity requirement, the complaint must include an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Depot, Inc. v. Caring for Montanans, Inc., 915 F.3d 643, 668 (9th Cir. 2019) (internal quotation marks omitted). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Kearns, 567 F.3d at 1124.

### 2. Subject Matter Jurisdiction

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a defendant may move to dismiss for lack of subject matter jurisdiction. Federal courts are courts of limited subject matter jurisdiction and cannot hear every dispute presented by litigants. Stock West, Inc. v. Confederated Tribes of the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989). Federal courts can only adjudicate cases which the Constitution or Congress authorize them to adjudicate: those cases involving diversity of citizenship (where the parties are from diverse states and the amount in controversy is at least $75,000), or a federal question, or those cases to which the United States is a party. See 28 U.S.C. § 1332(a)(1); see also Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375 (1994). Federal courts are presumptively without jurisdiction over civil cases and the burden of establishing that the court has jurisdiction rests upon the party asserting jurisdiction. Kokkonen, 511 U.S. at 377. If the court determines that it lacks subject matter jurisdiction, then the action must be dismissed. Fed. R. Civ. P. 12(h)(3).

"Where the plaintiff originally files in federal court, 'the amount in controversy is determined from the face of the pleadings.'" Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka, 599 F.3d 1102, 1106 (9th Cir. 2010) (citation omitted). "The

1 amount in controversy alleged by the proponent of federal jurisdiction—typically the
2 plaintiff in the substantive dispute—controls so long as the claim is made in good faith."
3 Id. at 1106.  "To justify dismissal, it must appear to a legal certainty that the claim is really
4 for less than the jurisdictional amount."  Id.

**B.    Analysis**

Defendant does not challenge subject matter jurisdiction based on diversity—iFit's home in Utah is uncontested.  Defendant instead focuses on the second prong of the assessment, that the amount in controversy is insufficient to support federal jurisdiction.

Analysis of the amount in controversy begins with the amount expressly sought by plaintiff to compensate for her alleged harm, or compensatory damages.  Because the compensatory damages as pleaded do not meet the jurisdictional threshold, the court turns to also assess whether punitive damages would help the plaintiff reach the $75,000 threshold—punitive damages may also be considered as part of the amount in controversy if they are properly pleaded.  Gibson v. Chrysler Corp., 261 F.3d 927, 945 (9th Cir. 2001) ("It is well established that punitive damages are part of the amount in controversy in a civil action." (citation omitted)).  The court discusses both forms of damages in turn to determine whether it may exercise jurisdiction over the case.  Finally, the court addresses the sufficiency of plaintiff's allegations related to the claim for fraud under California's Unfair Competition Law ("UCL") to determine whether that claim must be dismissed.

**1.    Compensatory Damages**

As noted above, this federal court only has jurisdiction or authority to hear cases in certain circumstances, such as where the plaintiff and defendants are legal residents of different states and the amount at issue in the controversy exceeds $75,000.  28 U.S.C. § 1332(a).  An amount in controversy "reflects the *maximum* recovery the plaintiff could reasonably recover."  Arias v. Residence Inn by Marriott, 936 F.3d 920, 927 (9th Cir. 2019).  Determination of the amount in controversy is based on the plain language of the complaint.  Reule v. H.O. Seiffert Co., 430 Fed. Appx. 584 (9th Cir. 2011).

6

Here, plaintiff does not allege an amount in controversy that exceeds $75,000. Plaintiff specifically pleads her damages, including economic losses for medical care, as follows: "As a result of the exposure to the offensive, chemical odor emitting from the internal components of the treadmill, Plaintiff suffered injuries, exacerbated asthma and allergy symptoms, and an economic loss of $634.00." Compl. ¶ 29.  Plaintiff does not point to any allegations in her complaint that demonstrate that the case meets the $75,000 threshold.  Even if the court considered the amounts paid for the defective treadmill and the replacement treadmill and their deliveries, the sum still would not reach $75,000.  The sum of all plaintiff's expenditures enumerated in the complaint, including the costs of the two treadmills, the delivery charges, the tips to delivery staff, and the extended service plan, reaches only $5,484.48.[1]  See Compl. ¶¶ 20, 22, 28, 29, 30, 31.

Plaintiff states in her opposition brief that the case involves "a damage amount of $2,000,000.00," but this contention is unsupported by any citation or any allegations included within the complaint.  Dkt. 17 at 5.  Plaintiff suggested at the hearing that she seeks to recover damages for emotional distress and medical expenses, but she provides no facts indicating that she sought and received medical care, for how long, and whether her allergic response to the fumes was anything other than temporary.  These damages must be alleged in the complaint with greater specificity than "general damages" to establish the court's jurisdiction.  Additionally, in her prayer for relief, plaintiff says nothing about compensatory damages or medical expenses, and instead seeks an award of out of pocket expenses, injunctive and equitable relief (unspecified), and punitive damages.  Therefore, the complaint lacks clarity and fails to establish that this court has jurisdiction to hear the dispute, and it must be dismissed.

---

[1] The court understands from the hearing that plaintiff received a refund of the amount paid for the first treadmill and that she retains the second treadmill, leaving her only out-of-pocket damages for (1) the cost of delivery of the first treadmill, $135.00 plus $40.00 tip, (2) the cost to return the first treadmill to Dick's Sporting Goods, $494.00 plus $140.00 tip, and (3) the cost for the service plan that does not apply to the used treadmill that she still retains, $279.00.

### 2. Punitive Damages

"It is well established that punitive damages are part of the amount in controversy in a civil action." Gibson v. Chrysler Corp., 261 F.3d 927, 945 (9th Cir. 2001) (citing Bell v. Preferred Life Assur. Soc'y, 320 U.S. 238, 240 (1943)).  Two steps are necessary before punitive damages may be included in the amount in controversy, however.  "First, the party asserting jurisdiction must establish that punitive damages would be permitted under the applicable state law based on the conduct alleged." In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig., No. MDL 2672 CRB (JSC), 2019 WL 1501577, at *4 (N.D. Cal. Apr. 5, 2019).  Second, the party seeking jurisdiction must determine the amount of punitive damages that are in controversy, which may be accomplished through introduction of "evidence of jury verdicts in cases involving analogous facts." Surber v. Reliance Nat. Indem. Co., 110 F. Supp. 2d 1227, 1232 (N.D. Cal. 2000).

California law provides for punitive damages as follows: "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." Cal. Civ. Code § 3294.  In assessing whether a plaintiff sufficiently alleges oppression, fraud, or malice, courts look to the definitions of those terms provided in section 3294:

> (1) 'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.
> (2) 'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.
> (3) 'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

Cal. Civ. Code § 3294(c)(1)-(3)) (italics in original); see also Jackson v. East Bay Hosp., 980 F. Supp. 1341, 1353 (N.D. Cal. 1997).  "Although the court will apply the substantive

8

law embodied in section 3294, determinations regarding the adequacy of pleadings are governed by the Federal Rules of Civil Procedure." Jackson, 980 F. Supp. at 1353 (citations omitted).

"[P]unitive damages may not be awarded for breach of contract." City of Hope National Medical Center v. Genentech, Inc., 43 Cal. 4th 375, 392 (2008). Punitive damages are not available under section 17200 either. Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1148 (2003) ("A UCL action is equitable in nature; damages cannot be recovered. . . We have stated that under the UCL, prevailing plaintiffs are generally limited to injunctive relief and restitution") (cleaned up).

Here, the only claims alleged in the complaint that can support an award for punitive damages are those for products liability. Plaintiff nowhere specifies, however, that defendant acted with oppression, fraud, or malice in relation to the manufacture or marketing of either treadmill. Plaintiff alleges how she was injured, but she fails to allege any particularly oppressive actions by defendant. Plaintiff specifically and repeatedly alleges that defendant's conduct was "negligent," (Compl. ¶¶ 60, 69, 86, 94, & 98), not that iFit willfully or consciously acted in a way that resulted in her harm. Therefore, plaintiff's prayer for punitive damages is insufficiently pleaded, and the prayer for punitive damages does not change the court's amount in controversy assessment.

### 3. Pleading of Fraud

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The pleading requirements of Rule 9(b) apply to UCL claims sounding in fraud. Kearns, 567 F.3d at 1125. As noted above, "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).

Here, plaintiff's UCL claim expressly relies on both the unfair and fraudulent prongs of the statute. Plaintiff avers under a header, "'Fraudulent' Prong," that she relied on misrepresentations regarding both the applicability of the extended service plan to the Freemotion treadmill and the lack of warnings in the instructional manual for the Nordic

Track 2450 Commercial treadmill. Compl. ¶¶ 108-11. While these allegations may generally address elements for a claim of fraud, they fail to specifically address the "who, what, when, where, and how" of the alleged fraudulent conduct as is necessary to meet federal pleading requirements under Rule 9(b). Therefore, plaintiff's UCL claim is insufficiently pleaded and must be dismissed.

## CONCLUSION

For the foregoing reasons, including that plaintiff's alleged damages do not meet the jurisdictional threshold and that the punitive damages that could have made up the difference are insufficiently pleaded, the court GRANTS defendant's motion to dismiss with leave to amend. Plaintiff's amended complaint must specify how the amount in controversy exceeds the jurisdictional threshold of $75,000, and, if plaintiff renews her fraud-based claim under the UCL, the amended complaint must specify the "who, what, when, where, and how" of the alleged fraud to satisfy the particularity requirements of Rule 9(b). The amended complaint must be filed on or before June 10, 2022. No additional parties or claims may be added without leave of court or stipulation of defendant.

**IT IS SO ORDERED.**

Dated: May 13, 2022

*/s/ Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge