UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRINA HARRISON,<br><br>    Plaintiff,<br><br>    v.<br><br>IFIT HEALTH & FITNESS, et al.,<br><br>    Defendants. | Case No. 21-cv-10079-PJH<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 30 |

Before the court is defendant iFit, Inc.'s motion to dismiss the first amended complaint ("FAC"). The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for August 11, 2022, has been VACATED. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

Pro se plaintiff Patrina Harrison is an asthma and allergy sufferer who resides in San Francisco. FAC ¶ 8. Defendant iFit, Inc. (erroneously sued as IFIT HEALTH & FITNESS; ICON HEALTH & FITNESS/NORDICTRACK; AND UTS) is a manufacturer of fitness equipment, including treadmills, based in Utah. FAC ¶ 10. Defendant manufactures the Nordic Track 2450 Commercial and Freemotion treadmills. FAC ¶ 10.

Plaintiff purchased a Nordic Track 2450 Commercial treadmill from Dick's Sporting Goods in Daly City, California, on January 16, 2021. FAC ¶¶ 14-20. She purchased the treadmill for aerobic exercise and selected the treadmill in particular because the salesperson represented that it did not emit any kind of chemical odors. FAC ¶¶ 14-18.

Plaintiff paid $2,299.99 for the treadmill, along with $135 for delivery to her residence and assembly, and when it was delivered and assembled in her home on January 29, 2021, she paid the delivery person a $40 tip. FAC ¶¶ 20-22.

Plaintiff began an exercise session on the treadmill following the delivery person's departure, and she describes,

> Within 15 minutes of Plaintiff's aerobic exercise session on the treadmill, a burst of hot, steaming, offensive, chemical odor immediately started to emitted [sic] from the internal console of the treadmill, resulting in Plaintiff inhaling all such chemical fumes, immediately resulting in Plaintiff experiencing shortness of breath, uncontrollable coughing, itching throat, dizziness, burning eyes, and burning nostrils, all caused from exposure to the chemical odor that was emitted from the treadmill's console . . .

FAC ¶ 24. The chemical odor filled plaintiff's apartment and remained. FAC ¶ 25. Plaintiff called Dick's Sporting Goods to initiate a return of the treadmill the same day, but she was told that it would not be picked up until February 28, 2021, at the earliest. FAC ¶ 27. Plaintiff hired a moving company to pick up the treadmill from her home and return it to Dick's Sporting Goods to mitigate further damage to her health on February 9, 2021, paying $494 plus a tip of $140.00. FAC ¶ 28.

Plaintiff emphasizes that the instructional manual of the Nordic Track 2450 Commercial treadmill omitted any disclosures or warnings of "off gassing" or "chemical emissions," and this omission had severe consequences for her as a person with asthma. FAC ¶ 21. Plaintiff alleges that her exacerbated asthma and allergy symptoms from the off-gassing of the treadmill caused her to lose a legal document assistant service contract in the value of $578,000. FAC ¶ 21.

Following the return of the Nordic Track 2450 Commercial treadmill, plaintiff purchased a Freemotion treadmill from Fitness Warehouse Direct on July 8, 2021, for a cost of $1,975.50, and a tip of $120.00, which included delivery, assembly, and an option for an extended manufacturer warranty through Icon Health and Fitness. FAC ¶ 30. She purchased a four-year extended service plan from Icon Health and Fitness for $279.99 on July 10, 2021. FAC ¶ 31. Plaintiff reports that she intended for the extended warranty to

1 apply to the Freemotion treadmill, but the paperwork for the extended service plan
2 applied to the Nordic Track 2450 Treadmill she purchased earlier. FAC ¶¶ 34-37. Icon
3 Health and Fitness representatives reported to plaintiff that the extended warranty would
4 not cover the second-hand treadmills sold by Fitness Warehouse Direct. FAC ¶ 37.

Procedural History

Plaintiff initiated this lawsuit by complaint filed December 30, 2021. Dkt. 1. The court granted plaintiff's motion to proceed in forma pauperis and screened the complaint pursuant to Title 28 U.S.C. § 1915(a)(1), concluding that the pleading satisfied the requirements of Rule 8. Dkt. 7. In the screening order, the court noted its concern with plaintiff's initial showing of subject matter jurisdiction. Dkt. 7 at 4.

Defendant iFit moved to dismiss the original complaint on several grounds, including lack of subject matter jurisdiction, failure to state a claim, and failure to plead with specificity a cause of action sounding in fraud. Dkt. 15. The court granted the motion, reasoning that plaintiff failed to establish that the amount in controversy exceeded $75,000, that the court could not consider punitive damages in support of the amount in controversy assessment, and that plaintiff failed to plead with particularity her claim sounding in fraud. Dkt. 27. Plaintiff filed the first amended complaint on June 8, 2022, alleging the following causes of action against all defendants:

1. Manufacturing defect,
2. Negligence – duty to warn,
3. Strict liability – inadequate warning,
4. Breach of contract,
5. Implied warranty of merchantability,
6. Implied warranty of fitness for a particular purpose, and
7. Violation of California Business and Professions Code Section 17200.

See FAC ¶¶ 46-117 (listing same causes of action as in the original complaint).

Defendant iFit filed the instant motion seeking dismissal of the FAC. Defendant asks for dismissal for several reasons, including lack of subject matter jurisdiction.

**DISCUSSION**

**A.  Legal Standard**

Federal courts are courts of limited jurisdiction and cannot hear every dispute presented by litigants.  Stock West, Inc. v. Confederated Tribes of the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989).  Federal courts can only adjudicate cases which the Constitution or Congress authorize them to adjudicate: those cases involving diversity of citizenship (where the parties are from diverse states and the amount in controversy is at least $75,000), or a federal question, or those cases to which the United States is a party.  See 28 U.S.C. § 1332(a)(1); see also Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375 (1994).  Federal courts are presumptively without jurisdiction over civil cases and the burden of establishing that the court has jurisdiction rests upon the party asserting jurisdiction.  Kokkonen, 511 U.S. at 377.  If the court determines that it lacks subject matter jurisdiction, then the action must be dismissed.  Fed. R. Civ. P. 12(h)(3).

**B.  Analysis**

Given the lack of substantive change from the original complaint to the now-operative FAC and the corresponding lack of change in the briefing, the primary issue that carries through to this motion is whether plaintiff has established subject matter jurisdiction.  The court thus focuses on the two issues necessary to establish diversity jurisdiction: (1) whether plaintiff has sufficiently pleaded complete diversity of citizenship and (2) whether plaintiff establishes that the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  The court does not reach the merits of plaintiff's claims.

**1.  Diversity of Parties**

For purposes of diversity jurisdiction, a corporation is considered to have two citizenships—a corporation is a citizen of both the state in which it is incorporated and the state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).  "Given their limited jurisdiction, federal courts have repeatedly held that a complaint must include allegations of both the state of incorporation and the principal place of business of

4

corporate parties." Harris v. Rand, 682 F.3d 846, 850 (9th Cir. 2012). Further, "the diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of citizenship, not of residency." Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001).

Defendant argues that the FAC falls short of alleging diversity citizenship because it fails to plead both of the corporation's citizenships, and it alleges only that iFit is a "resident" of Utah. FAC ¶ 10. Plaintiff does not address this argument at all.

Here, defendant is correct that plaintiff fails to establish diversity citizenship where she fails to include allegations of both iFit's state of incorporation and its principal place of business. Plaintiff's allegation that iFit is a resident of Utah is insufficient to identify both of the company's citizenships. The court must dismiss the FAC on this basis.

### 2. Amount in Controversy

"Where the plaintiff originally files in federal court, 'the amount in controversy is determined from the face of the pleadings.'" Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka, 599 F.3d 1102, 1106 (9th Cir. 2010) (citation omitted). "The amount in controversy alleged by the proponent of federal jurisdiction—typically the plaintiff in the substantive dispute—controls so long as the claim is made in good faith." Id. at 1106. Determination of the amount in controversy is based on the plain language of the complaint. Reule v. H.O. Seiffert Co., 430 Fed. App'x. 584 (9th Cir. 2011). However, a court may also consider a settlement demand as "relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." Acad. of Country Music v. Cont'l Cas. Co., 991 F.3d 1059, 1069 (9th Cir. 2021) (quoting Cohn v. Petsmart, Inc., 281 F.3d 837, 840 (9th Cir. 2002)).

Here, plaintiff pleads her damages as follows:

> Plaintiff sustained economic damages in the amount $578,000.00, from loss of profits, due to losing a company contract, as a result from suffering from exacerbated asthma and allergy symptoms, resulting from the injuries for the exposure of the off-gassing of the chemical odor from the Nordic Track Commercial 2450, and injury to foots [sic], Plaintiff also sustained non-economic damages in the amount of $85,000.00, and punitive damages in the amount $450,000.00.

5

FAC ¶¶ 52, 62, 71, 79, 88, 96, 117.  Defendant avers that these damages allegations are overly general and implausible.  Plaintiff also seeks to recover out-of-pocket expenses totaling $1722 from medical bills ($634; FAC ¶ 29), delivery and return of the first treadmill ($809; FAC ¶¶ 20, 22, 28), and the cost of the service plan that does not apply to the used treadmill she still retains ($279; FAC ¶ 31).  Plaintiff's new claims of economic and non-economic losses are discussed first before turning to consider whether the FAC supports consideration of punitive damages in the amount-in-controversy assessment.

### a. Economic and Non-Economic Losses

When determining whether a plaintiff has sufficiently pled that the amount in controversy exceeds $75,000, "the plaintiff's amount-in-controversy allegation is accepted if made in good faith." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 87 (2014) (citation omitted).  "But making a claim in 'good faith' means that a plaintiff's 'estimations of the amounts recoverable must be realistic.  The inquiry should be objective and not based on fanciful, pie-in-the-sky, or simply wishful amounts, because otherwise the policy to limit diversity jurisdiction will be frustrated.'" Choudhuri v. Wells Fargo Bank, N.A., No. 15-CV-03608-VC, 2016 WL 3212454, at *3 (N.D. Cal. June 10, 2016) (quoting Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 403 (3d Cir. 2004)); see also Diamondstar Entm't Holdings, LLC v. THH LLC, No. 8:21-CV-01150 KES, 2021 WL 2982911, at *2 (C.D. Cal. July 15, 2021).  Relevant to the inquiry here, courts in California have determined that "a plaintiff's recovery 'may include loss of anticipated profits' if its 'established business has been injured.'" W. Pac. Elec. Co. Corp. v. Dragados/Flatiron, 534 F. Supp. 3d 1209, 1256 (E.D. Cal. 2021) (quoting Fibreboard Paper Prod. Corp. v. E. Bay Union of Machinists, Local 1304, United Steelworkers of Am., AFL-CIO, 227 Cal. App. 2d 675, 702, (1964)).

Here, the FAC contends that the off-gassing of the treadmill triggered symptoms that caused plaintiff to lose a legal document assistant service contract valued at $578,000. See, e.g., FAC ¶ 21.  But the allegations supporting this amount are thin.  The FAC does not establish (1) any specific third party with whom the contract was allegedly

6

lost or (2) the existence of any business relationship with that party. Plaintiff's general description of the lost profits appears too speculative without more detail about the anticipated contract. Beyond the lack of detail, $578,000 represents a "pie-in-the-sky" amount when compared to her earlier settlement demand. Plaintiff's "Letter of Intent to Sue" only sought between $25,000 and $50,000, a range that suggests the $578,000 she now seeks is not a reasonable sum to consider in the amount in controversy. Dkt. 15-6; see also Acad. of Country Music, 991 F.3d at 1069.

Additionally, the FAC does not allege facts supporting recovery of loss of anticipated profits. Plaintiff does not allege that she had an established business that could have been injured. To the contrary, plaintiff represented in her motion to proceed in forma pauperis that she has not had an established business where she certified that (1) she receives monthly Social Security benefits and (2) she has not received income from business, profession, or self-employment in 12 months. See Dkt. 4 at 2. Without allegations to support that an established business has been injured, the FAC does not show that plaintiff is entitled to recover loss of anticipated profits.

Plaintiff's allegation that she suffered $85,000 in non-economic damages finds even less contextual support in the FAC than her allegations regarding the lost profits. See FAC ¶ 45. Plaintiff offers no description of such non-economic damages, and the figure appears unrealistic in comparison to her medical bills as well as the amounts she paid for the treadmills. Taken together, plaintiff's unsupported claims for recovery of lost profits in the amount of $578,000 and recovery of non-economic damages in the amount of $85,000 appear unrealistic and do not support a determination that the amount in controversy exceeds $75,000.

### b. Punitive Damages

"It is well established that punitive damages are part of the amount in controversy in a civil action." Gibson v. Chrysler Corp., 261 F.3d 927, 945 (9th Cir. 2001) (citing Bell v. Preferred Life Assur. Soc'y, 320 U.S. 238, 240 (1943)). Two steps are necessary before punitive damages may be included in the amount in controversy, however. "First,

7

the party asserting jurisdiction must establish that punitive damages would be permitted under the applicable state law based on the conduct alleged." In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig., No. MDL 2672 CRB (JSC), 2019 WL 1501577, at *4 (N.D. Cal. Apr. 5, 2019).  Second, the party seeking jurisdiction must determine the amount of punitive damages that are in controversy, which may be accomplished through introduction of "evidence of jury verdicts in cases involving analogous facts."  Surber v. Reliance Nat. Indem. Co., 110 F. Supp. 2d 1227, 1232 (N.D. Cal. 2000).

California law provides for punitive damages as follows: "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."  Cal. Civ. Code § 3294.  In assessing whether a plaintiff sufficiently alleges oppression, fraud, or malice, courts look to the definitions of those terms provided in section 3294:

> (1) 'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a *willful and conscious disregard* of the rights or safety of others.
> (2) 'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in *conscious disregard* of that person's rights.
> (3) 'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

Cal. Civ. Code § 3294(c)(1)-(3)) (italics in original).  "Although the court will apply the substantive law embodied in section 3294, determinations regarding the adequacy of pleadings are governed by the Federal Rules of Civil Procedure."  Jackson v. East Bay Hosp., 980 F. Supp. 1341, 1353 (N.D. Cal.  1997) (citations omitted).

"[P]unitive damages may not be awarded for breach of contract."  City of Hope National Medical Center v. Genentech, Inc., 43 Cal. 4th 375, 392 (2008).  Punitive damages are not available under section 17200 either.  Korea Supply Co. v. Lockheed

8

Martin Corp., 29 Cal. 4th 1134, 1148 (2003) ("A UCL action is equitable in nature; damages cannot be recovered. . . We have stated that under the UCL, prevailing plaintiffs are generally limited to injunctive relief and restitution") (cleaned up).

Here, the only claims alleged in the complaint that can support an award for punitive damages are those for products liability because plaintiff's claims for breach of contract and violation of section 17200 cannot support punitive damages. Plaintiff's recovery of punitive damages based on products liability fails, however, because the FAC nowhere specifies that defendant acted with oppression, fraud, or malice in relation to the manufacture or marketing of either treadmill. See Cal. Civ. Code § 3294(c). Plaintiff specifically and repeatedly alleges that defendant's conduct was "negligent," (FAC ¶¶ 60, 69, 86, and 94), not that iFit willfully or consciously acted in a way that resulted in her harm. None of these allegations "establish that punitive damages would be permitted under the applicable state law based on the conduct alleged." In re Volkswagen, 2019 WL 1501577, at *4.

Assuming plaintiff had established that any of her claims would support an award of punitive damages, she still would fall short of the second step necessary to consider punitive damages as part of the amount in controversy. She provides no evidence to support the $450,000 in punitive damages she seeks. Plaintiff has not introduced "evidence of jury verdicts in cases involving analogous facts" to support such a punitive damage award. See Surber, 110 F. Supp. 2d at 1232. For both of these reasons, plaintiff fails to establish that punitive damages should be considered in the amount in controversy and her claim for punitive damages does not support a determination that the amount in controversy exceeds $75,000.

## CONCLUSION

For the foregoing reasons, the court GRANTS defendant's motion to dismiss the FAC. Plaintiff does not establish this court's subject matter jurisdiction. Plaintiff's allegations regarding defendant's residency are insufficient for purposes of establishing diversity of citizenship. Plaintiff's allegations regarding the amount in controversy do not

plausibly establish that the amount in controversy exceeds the $75,000 threshold because plaintiff does not show she is entitled to recover lost profits, non-economic damages, or punitive damages. Given that plaintiff was already afforded an opportunity to amend on this exact issue, the court finds that further amendment of the allegations regarding the amount in controversy would be futile, and therefore, the court does not grant leave to file another amended complaint.  The FAC is DISMISSED without prejudice to filing in state court.

**IT IS SO ORDERED.**

Dated: August 11, 2022

*/s/ Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge